UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

REGINALD SCOTT,

Petitioner,

v.

MICHELLE R. RICCI, et al.,

Respondent.

Civil Action No. 10-6168(SRC)

OPINION

I. **INTRODUCTION**

This matter has been opened to the Court by Petitioner's filing of a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Having reviewed the Petition, Respondent's Answer, and the relevant record, the Court will deny the Petition for the reasons stated in this Opinion and will also deny a certificate of appealability.

II. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

After pleading guilty in August 1997 to two counts of an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11–4(a)(1), and other charges, Scott was sentenced on the first manslaughter count to a sixty-year term of imprisonment with a twenty-five year period of parole ineligibility.[1] The judge determined that he was subject to sentencing pursuant to the Graves Act, N.J.S.A. 2C:43–6(c) and –7(c) and N.J.S.A. 2C:44–3(d), and found that three aggravating factors substantially outweighed the non-existent mitigating factors. Concurrent terms of imprisonment were imposed based on Scott's guilty plea to the second count of

---

[1] Portions of the factual background are taken from the state court decision, *State v. Scott*, No. A-2211-11T1, 2013 WL 375548, at *1–2 (N.J. Super. Ct. App. Div. Feb. 1, 2013).

1

aggravated manslaughter, two counts of first-degree robbery, N.J.S.A. 2C:15–1, and one count of third-degree unlawful possession of a handgun, N.J.S.A. 2C:39–5(b). The remaining charges were dismissed pursuant to the plea agreement.

Scott filed an appeal in July 2000. Because the transcript of the sentencing proceedings was not available, the Appellate Division remanded to the trial court "for reconstruction of the sentencing hearing." In November 2001, the trial judge attempted to reconstruct the record, but acknowledged that the then attorneys for Scott and the State did not then have access to Scott's sentencing hearing files and were not in a position to help.

The appeal was then placed on a sentencing calendar. In February 2002, after hearing argument, the Appellate Division again remanded to the trial judge "to reconstruct the record of the imposition of sentence upon [Scott], such reconstructed record to include a statement of reasons by the trial [judge] for the maximum terms imposed." The Appellate Division did not retain jurisdiction.

In February 2002, the trial judge sent a second reconstruction to counsel and the Appellate Division. Although advised of the judge's reconstruction, Scott's then appellate attorney did not apply to have the appeal reinstated. Consequently, Scott never obtained direct appellate review of his sentence.

In May 2002, Scott filed a *pro se* petition for PCR. *See* ECF No. 23-12 at 2-5. The trial judge dismissed the petition without a hearing in October 2005. *See* ECF No. 23-13. Scott appealed.

On January 23, 2007, the Appellate Division vacated the dismissal and remanded for an evidentiary hearing. The Appellate Division also stated that Scott could seek to amend his petition to include a claim of ineffective assistance by his appellate counsel, based upon the

2

failure to pursue the direct appeal, and provided that the remand hearing should encompass that issue if the petition was amended. *See* ECF No. 23-17. PCR counsel, however, never sought to amend the petition to raise the issue of appellate counsel.

The remand hearing on the ineffective assistance claims related to the plea was held in April and May 2007. *See* ECF Nos. 23-17-18. The PCR judge determined that there was no basis for relief and dismissed the petition. *See* ECF No. 19. Scott again appealed. On July 27, 2009, the Appellate Division affirmed the judge's determination as to the issues raised in the initial PCR petition but found that PCR counsel had been ineffective in failing to amend the petition to raise the issue related to appellate counsel and remanded for a hearing on that issue. *See* ECF No. 24-3; *see also State v. Scott*, 2009 WL 2209737, at *10 (App. Div. Jul. 27, 2009).

On or about October 29, 2010, while his PCR was still pending, Scott submitted what appeared to be a protective habeas petition, seeking a stay to complete his state court proceedings. *See* ECF No. 1. That submission was administratively terminated because Petitioner failed to submit the filing fee or an application to proceed *in forma pauperis* ("IFP"). Petitioner paid the filing fee on or about May 23, 2011. *See* ECF No. 5.

Meanwhile, also in May 2011, a different PCR judge ("second PCR court") held the second remand hearing in state court. *See* ECF No. ECF No. 24-6. The second PCR court determined that PCR and appellate counsel were constitutionally ineffective with respect to the failure to pursue the sentencing appeal, but that Scott did not suffer prejudice because the overall sentence imposed was shorter than the plea agreement.[2] *Id.* Scott appealed.

---

[2] The judge relied on state law, *State v. Soto*, 385 N.J. Super. 247, 255 (App. Div.), *certif. denied*, 188 N.J. 491 (2006), holding that a defendant accepting a plea offer cannot subsequently argue that the base sentence is excessive.

3

While his appeal of the denial of his PCR was pending in state court, this Court issued an Order To Show Cause ("OTSC") directing Petitioner to show cause as to why his request for a stay should be granted. ECF Nos. 7-8. In his Reply to the OTSC, Petitioner clarified that he sought to raise two claims for relief in his Petition:

> Petitioner raises the following two claims for relief in his § 2254 habeas corpus petition.
>
> A.  GROUND ONE: PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DURING PLEA NEGOTIATIONS
>
> B.  GROUND TWO: PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON HIS DIRECT APPEAL

ECF No. 9, OTSC Reply at 4. Petitioner further clarified that he "filed for a stay and abeyance of his § 2254 petition while the last round of his State court appeals are in progress. . . ." *Id.* On December 5, 2012, the Court granted his request for a stay and administratively terminated this matter. ECF No. 11.

On February 1, 2013, the Appellate Division reversed the PCR court determination as to Petitioner's sentencing claim and remanded for resentencing.[3] Scott was resentenced to an aggregate term of 60 years with a 25-year parole disqualifier.[4] *See* ECF No. 23. Respondent's Answer ("Answer") at 23. Scott appealed, and the Appellate Division affirmed his sentence on

---

[3] The Appellate Division held that the trial court improperly applied aggravating factor 2, N.J.S.A. 2C:44-1a(2). *See State v. Scott*, No. A-2211-11T1, 2013 WL 375548, at *3 (N.J. Super. Ct. App. Div. Feb. 1, 2013).

[4] On resentencing, the sentencing court did not apply aggravating factor 2.

4

November 23, 2013, *see* ECF No. 24-10, and the New Jersey Supreme Court denied certification on June 23, 2014. *See* ECF No. 24-11.

On August 22, 2014, Petitioner timely sought to reopen this matter. *See* ECF No. 13. On March 10, 2015, the Court directed Petitioner to file an all-inclusive amended petition. *See* ECF No. 16. Petitioner subsequently clarified that he was not seeking habeas relief on his recently exhausted illegal sentence claim and sought to proceed on the habeas petition as filed. ECF No. 19. The Court directed Respondent to file an Answer. *See* ECF Nos. 20, 22.

Respondents filed an Answer on June 30, 3015. ECF Nos. 23-24. Petitioner did not file a reply. The matter is fully briefed and ready for disposition.

### III. STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by AEDPA (28 U.S.C. § 2244), federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits,[5] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d) (1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

---

[5] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

6

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)).

7

If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV. ANALYSIS

### a. Ineffective Assistance Claims

The Court construes Petitioner to raise two ineffective assistance claims:

> A. GROUND ONE: PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DURING PLEA NEGOTIATIONS
>
> B. GROUND TWO: PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON HIS DIRECT APPEAL

ECF No. 9, Reply to OTSC at 4.[6] The Court considers these claims in turn.

---

[6] In its Supplemental Order, the Court construed Petitioner to raise only ineffective assistance of trial counsel in connection with his plea. *See* ECF No. 22. Upon closer inspection, however, it appears that Petitioner also alleges that his appellate counsel was ineffective for failing to raise the sentencing issue on direct appeal. Although the Court does not construe Petitioner to raise the underlying sentencing issue, it will, for completeness, address the ineffective assistance of appellate counsel claim.

8

Federal habeas corpus relief may not be granted with respect to any claim a state court has adjudicated on the merits unless, among other exceptions, the state court's decision denying relief involves "an unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States." Here, the relevant clearly established law derives from *Strickland v. Washington*, 466 U.S. 668 (1984), which provides the standard for inadequate assistance of counsel under the Sixth Amendment.

To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing Strickland, 466 U.S. at 688). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* (citing *Strickland*, 466 U.S. at 689). The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694). It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* (citing *Strickland*, 466 U.S. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (citing *Strickland*, 466 U.S. at 687).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" and focuses on "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

With respect to his *Strickland* claim against plea counsel, Petitioner argued on PCR that (1) plea counsel promised an unspecified reduction in his sentence and that Petitioner expected to be sentenced to approximately 25 years with a 12.5 year stipulation and that (2) plea counsel was ineffective with respect to Petitioner's request to withdraw his guilty plea after he learned that his plea counsel could not promise him a specific sentence. *See* ECF No. 23-12 at 7-8, Pet. Affidavit dated Jan. 13, 2005.

As noted above, on October 31, 2005, the PCR court denied Petitioner's claims without a hearing, and, on January 23, 2007, the Appellate Division remanded the matter for a hearing. Following a hearing, the second PCR court issued a written opinion finding "little credibility" in Petitioner's testimony for the following reasons: Petitioner admitted to simply "hoping" for a lower sentence and did not raise any concerns during the plea or at sentencing; the plea form and the plea colloquy suggested that Petitioner had a clear understanding of his sentence; and Petitioner did not submit a sworn affidavit until more than four years after pleading guilty. *See* ECF No. 23-19, at 8, PCR opinion dated Jun. 5, 2007. The second PCR court also found the testimony of plea counsel to be credible when he stated that he did not remember certain events and when he stated that he discussed Petitioner's case with him and negotiated the plea as reflected on the plea form. *Id.* Finding "no evidence" of deficiency, the second PCR court found that the hope for a lower sentence did not give rise to a *Strickland* claim and that there was no allegation that plea counsel "promised" a 25 year sentence with a 12.5 year stipulation. *Id.* The

10

second PCR court further found that Petitioner's claim that he attempted to contact plea counsel to withdraw his plea was unsubstantiated, and that he waited 4.5 years to contact anyone about this issue. *Id.* Finally, the second PCR court found that Petitioner failed to meet the prejudice prong of Strickland with respect to his claims. *Id.* at 8-9.

Petitioner appealed. On appeal from denial of PCR, following the hearing, Petitioner argued that the Court erred in finding that Defendant had not received ineffective assistance of counsel with regard to his attempt to withdraw his guilty plea.[7] *See* ECF No. 24-1, at 12-17.

On July 27, 2009, the Appellate Division affirm[ed] the June 5, 2007, order denying PCR finding that Petitioner's claim that he received ineffective assistance of counsel when he entered his plea lack[ed] merit." *Scott*, 2009 WL 2209737, at *1. Notably, the Appellate Division exercised its original jurisdiction to decide the issue without considering the credibility determinations made by the second PCR judge who conducted the evidentiary hearing.[8] *See id.* at *6.

The Appellate Division addressed the alleged ineffectiveness of Petitioner's plea counsel at length and rejected Petitioner's claims as follows:

> In *Strickland, supra*, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L. Ed.2d at 692, the Court explained the constitutional guarantee of effective assistance of counsel for every criminal defendant embodied in the Sixth Amendment. A two-prong analysis is required when evaluating a claim of ineffective assistance of counsel. *Id.* at 687, 104 S.Ct. at 2064, 80 L. Ed.2d at 693. To prevail, the defendant must first demonstrate that trial counsel committed serious professional errors. *Ibid.* Second, defendant must demonstrate the professional errors prejudiced him or her to the extent that defendant was deprived of a fair trial. *Ibid.* Our

---

[7] On appeal, Petitioner did not argue that plea counsel misadvised him regarding his sentencing exposure.

[8] The second PCR judge was previously a prosecutor who signed Petitioner's indictment and may have presented the case to the grand jury, which presented a potential conflict.

11

Supreme Court has adopted the standards embodied in *Strickland*. *State v. Fritz*, 105 N.J. 42, 57-58, 519 A.2d 336 (1987).

Defendant contends the PCR judge "erred in reaching the conclusion that defendant received effective assistance of counsel with regard to [his] attempt to withdraw his guilty plea." Defendant's plea counsel was not able to recall whether defendant sought to withdraw his plea. Thus, defendant's sworn testimony that he did so stands unrebutted. For the purpose of this opinion, we assume that a failure to file a motion to withdraw a guilty plea where a defendant tells his attorney he is innocent and misunderstood the penal consequences of his plea constitutes a serious professional error satisfying the first prong of *Strickland*. Thus, we examine the objective record to determine whether defendant has demonstrated he was prejudiced as a result of this professional error.

A motion to withdraw a guilty plea is committed to the judge's sound discretion. *State v. Slater*, 198 N.J. 145, 156, 966 A.2d 461 (2009); *State v. Phillips*, 133 N.J. Super. 515, 518, 337 A.2d 627 (App. Div. 1975). That discretion should ordinarily be exercised liberally where the motion is made before sentencing. *Slater*, supra, 198 N.J. at 156, 966 A.2d 461 (citations omitted). "In a close case, the 'scales should usually tip in favor of defendant.'" *Ibid.* (quoting *State v. Taylor*, 80 N.J. 353, 365, 403 A.2d 889 (1979)).

Defendant bears the burden to demonstrate that fairness requires withdrawal of his plea and he must make that showing upon a balance of competing factors. *State v. Russo*, 262 N.J. Super. 367, 372-73, 621 A.2d 50 (App. Div. 1993). Those factors are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." *Slater*, *supra*, 198 N.J. at 157-58, 966 A.2d 461 (citation omitted).

With respect to the first factor, "[a] bare assertion of innocence is insufficient to justify withdrawal of a plea." *Id.* at 158, 966 A.2d 461. Instead, a defendant must "present specific, credible facts and, where possible, point to facts in the record that buttress[ed his] claim." *Ibid.* (citations omitted).

With respect to the second factor, the nature and strength of defendant's reasons for withdrawal, the Court identified four examples "of reasons warranting withdrawal of a plea." *Id.* at 159, 966 A.2d 461. They are as follows:

12

(1) the court and prosecutor misinformed the defendant about a material element of the plea negotiation, which the defendant relied on in entering his plea; (2) the defendant was not informed and thus did not understand material terms and relevant consequences of the guilty plea, namely, the direct, penal consequences of the plea; (3) defendant's reasonable expectations under the plea agreement were not met; and (4) the defendant has not only made a plausible showing of a valid defense against the charges, but also credible demonstrated why that defense "was forgotten or missed" at the time of the plea.

[*Id.* at 159-60, 966 A.2d 461 (citations omitted).]

Although we are not to approach the reasons for withdrawal with skepticism, we "must act with 'great care and realism' because defendants often have little to lose in challenging a guilty plea." *Id.* at 160, 966 A.2d 461 (citation omitted).

The third *Slater* factor, whether the plea was entered as the result of a plea bargain, although satisfied here, is entitled to little weight, as the *Slater* Court recognized. *Id.* at 161, 966 A.2d 461. As to the fourth factor, "[t]he State is not required to show prejudice if a defendant fails to offer proof of other factors in support of the withdrawal of a plea." *Id.* at 162, 966 A.2d 461. It offered no such proof here.

Applying the *Slater* standards to the second prong of *Strickland* compels us to conclude that the failure of plea counsel to move to vacate the plea did not prejudice defendant. He testified under oath at the plea hearing that he wanted to plead guilty to certain charges against him and he understood what those charges meant. He swore he voluntarily signed the three-page plea form, which he understood before he signed it, and initialed the first two pages. He affirmed that the contents of the plea form were true. He testified that his plea counsel had spoken with him, explained the charges, and answered any questions he had. He told the judge that he was satisfied with his counsel's advice.

Defendant also testified that he understood the prosecutor would recommend a sentence not to exceed sixty years of which thirty years would be parole ineligible and the judge was not bound by the plea agreement. He acknowledged if the sentence was greater than the recommendation, he could withdraw his plea and go to trial on all charges. Defendant admitted he was eligible for an automatic extended term on many of the charges in the indictment and could be sentenced to life imprisonment with fifteen to twenty-five years being parole ineligible on the murder and armed-robbery charges. He stated that he knew what sentences he faced on the other charges and understood the fines and penalties that could be

imposed. The judge then asked, "Do you also understand that no one can tell what my actual sentence will be?" Defendant replied, "Yes." The judge then queried defendant respecting the rights he would be giving up by pleading guilty and defendant testified that he understood he was surrendering all of rights the judge mentioned.

After the judge finished his *voir dire* of defendant, defendant testified to the facts relevant to the charges he was admitting that day. He testified that on June 12, 1996, he was on Northford Avenue, Newark, at 11:45 p.m. when he tried to rob a man's gold chain and he "shot the Jeep up." He testified that four people were in the Jeep and he shot two of them before he went home. He had a nine millimeter gun but did not remember how many shots he fired. After being shot, the driver was not able to continue driving. Later, he learned that two people in the car died. The judge then asked if defendant's plea was entirely voluntary and he said that it was. As a result, the judge accepted his plea.

At his PCR evidentiary hearing, defendant testified his plea counsel told him that the judge would "take off some time at the sentencing day from the negotiated plea of 60 with a 30" but his attorney said he could not give him a specific number. It was defendant's expectation that he would receive a maximum of twenty-five years with twelve years as a minimum; that was what he was hoping to receive. He admitted his expectation was not based on anything his attorney said. Defendant explained that the first plea offer was "60 with a 30," which he rejected. The second plea offer was "30 with a 30," which he also rejected. The third offer was "60 with a 30, again," with which he said he could not live. When defendant's counsel could not tell him how much time the judge would cut off the plea agreement, defendant told his attorney to withdraw the plea. This occurred two or three days after he pled guilty. Defendant testified that his attorney told him it was too late, defendant had accepted the plea agreement, and that defendant could not "win the case, after I kept saying I was innocent[t]." Defendant then accepted his attorney's advice that it was too late to withdraw his plea. He admitted that he did not mention anything about this to the judge at sentencing.

On cross-examination, defendant admitted that he knew he was a Graves Act offender subject to an extended term. He admitted that his "Statement of the Facts" was prepared eight and one-half years after his guilty plea. He further admitted that he answered "yes" to the questions on the plea form, including the questions about whether he committed the crimes to which he was pleading guilty and whether he understood what the charges meant. He admitted that the prosecutor's recommended sentence was disclosed on the

14

plea form on a page that he initialed. He also denied on the plea form that any promises or representations other than those contained in the plea agreement had been made by his defense attorney or anyone else as part of the guilty plea or had caused him to plead guilty. Finally, he admitted he indicated on the plea form he was satisfied with the advice he received from his attorney and had no questions about the plea agreement.

After reviewing the transcript of his guilty plea, defendant admitted the transcript reflected what happened in court that day and that he was not forced to give the answers he did. He also admitted giving the answers reflected in the transcript to questions seeking to establish the factual basis for his guilty plea and stated he was not forced to give the answers. He further admitted that he did not express any misgivings or reservations to the judge at the plea hearing, but explained he did not do so because he "already had it in my mind that I was going to get a lesser sentence." He also did not express any misgivings or reservations at his sentencing because he trusted his attorney, who had told him it was too late to withdraw his plea.

On redirect examination, defendant testified he said at the plea hearing no one could tell what the judge's actual sentence would be. However, the plea form said, "If you are pleading guilty to [a charge requiring a mandatory period of parole ineligibility], the minimum mandatory period of parole ineligibility is 10 years...." Although defendant claimed he relied on this number, but then said, "I probably didn't even read it, I trusted my attorney." On further cross-examination, defendant testified "nobody promised me nothing, but we had an agreement that on sentencing date I would not be sentenced to 60 with a 30." Ultimately, he admitted he was not "sentenced to 60 with 30" but was sentenced to "60 with 25."

Defendant did not testify that his counsel made any promises or statements to him about sentencing that were not true and that he relied on them in agreeing to plead guilty. He did not even seek to impeach his testimony at the plea hearing where he set forth a factual basis for the charges to which he was pleading.

Defendant did not present any specific, credible fact to support his bare, unsworn claim that he was innocent. Thus, he has not satisfied the first factor we are required by *Slater* to consider. As to the second factor, we assume that defendant was credible in his testimony. However, he clearly acknowledged that he sought to withdraw his plea, not because of any of the four examples of justifiable reasons identified by *Slater* as quoted above, but because his foundationless "hopes" were not realized. This is an insufficient reason for withdrawal of a plea where the penal

15

> consequences were plainly spelled out in the plea form and
> described on the record at the time of defendant's plea. We are
> satisfied that the judge who accepted defendant's plea would have
> denied a motion to vacate it because defendant admitted that no
> one had promised him a maximum sentence of thirty years or less
> and that the "agreement that on sentencing date [he] would not be
> sentenced to 60 with a 30" was in fact honored, assuming that such
> an "agreement" ever was made. Because defendant has not proven
> that he even had a colorable basis for withdrawing his plea,
> defendant has not met his burden to prove prejudice under the
> second prong of *Strickland*.

*Id.* at *6-9.

Here, the Appellate Division did not unreasonably apply *Strickland* in the plea context.[9] It is well established that defendants are "entitled to the effective assistance of competent counsel" during plea negotiations. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Hill v. Lockhart*, 474 U.S. 52 (1985) the Court held "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. at 58. The performance prong of *Strickland* requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" 474 U.S., at 57 (quoting *Strickland*, 466 U.S., at 688); *see also Lafler v. Cooper*, 566 U.S. 156, 162–63. "In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. It is also well-established that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992). *See also Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985) (voluntariness of guilty plea depends on adequacy of counsel's advice); *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts,

---

[9] Nor did the Appellate Division unreasonably apply the facts in light of the evidence.

circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."). A petitioner has a Sixth Amendment claim when "the advice that he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer." *Day*, 969 F.2d at 43.

Here, Petitioner has not made the required showing, and the Appellate Division found that Petitioner understood the terms of the plea and sentencing exposure and that there was no evidence that plea counsel made untrue promises to Petitioner about his sentencing exposure or that Petitioner relied on such promises in pleading guilty. The Appellate Division further held that Petitioner failed to show that he prejudiced by his plea counsel's failure to file the motion to withdraw the plea because that motion would not have been successful under state law. Because the Appellate Court did not unreasonably apply *Strickland*, the Court will deny relief on this claim.

The Court will also deny relief on Petitioner's ineffective assistance of appellate counsel claim. The basis for this claim is appellate counsel's failure to file a direct appeal on Petitioner's behalf to challenge his sentence. Because Petitioner already received relief from the Appellate Division on this claim – in the form of resentencing – he cannot show prejudice. As such, no relief is warranted on this claim.

### b. Certificate of Appealability

The Court will also deny a certificate of appealability. Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right." Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will deny a COA.

## V. CONCLUSION

For the reasons expressed in this Opinion, the Petition is denied and the Court declines to issue a certificate of appealability. An Appropriate Order follows.

s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

Dated: 12-18-18